IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| VANESSA O. HAGGINS, | ) | |
| | ) | |
| PLAINTIFF, | ) | C.A. No. 3:13-CV-1596-MBS-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SAM'S EAST, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Vanessa Haggins ("Haggins" or "Plaintiff"), filed this action against her employer, Sam's East, Inc. ("Sam's" or "Defendant"), alleging gender[1] discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as well as discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, 12112(b), as amended. Plaintiff's claims focus on her being required to do specific tasks that male employees were not required to do and on her being required to work in certain capacities despite her claimed disability. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant's Motion for Summary Judgment. ECF No. 35. Having considered the Motion; Plaintiff's Response, ECF No. 39; Defendant's Reply, ECF No. 40; and applicable law, the undersigned recommends that Defendant's Motion for Summary Judgment be *granted* and this matter be ended.

---

[1] Plaintiff's Complaint also included a Title VII cause of action for race discrimination. In responding to Defendant's Motion for Summary Judgment, Plaintiff concedes that she did not include race as a basis of discrimination in her charge submitted to the Equal Employment Opportunity Commission ("EEOC"), and states that she now proceeds only her claims of gender and disability discrimination. Pl.'s Mem. 1, ECF No. 39. Summary judgment is appropriate as to Plaintiff's claim of race discrimination.

I.    Standard of Review

   A.  Motions for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The*

*Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B. Proof of Employment Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff does not argue she has presented any direct evidence of discrimination, so the court considers her claims under the burden-shifting framework. Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the

defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To make out a prima facie case of gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Serv.,* 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003)).

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111(2), 12112(a). Plaintiff proceeds under the burden-shifting framework for her ADA claim, as well. *See Ennis*, 53 F.3d at 59 (finding *McDonnell Douglas* burden-shifting scheme applies to ADA claims). To establish a prima facie claim for disability discrimination under the ADA, Plaintiff must establish that (1) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was meeting the employer's legitimate performance expectations at the time of the adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable

inference of unlawful discrimination. *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (considering ADA wrongful-termination claim).[2]

While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves,* 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)). *See also Ennis,* 53 F.3d at 58 (citing *St. Mary's Honor Center* and noting the same in ADA context).

II.     Analysis[3]

Plaintiff began working for Sam's on August 31, 1999 at its Columbia, South Carolina location as a full-time Maintenance Associate, a position she still holds. *See* Pl.'s Mem. 1.

---

[2] Although the *Reynolds* court sets out these prima facie elements in considering a disability-related *wrongful-termination* claim, both parties analyze the prima facie claim here in a *failure-to-accommodate* claim using the prima facie elements from *Reynolds. See* Def.'s Mem. 12, Pl.'s Resp. 8. Accordingly, the court focuses on them herein.

[3] Unlike those in many employment actions, the facts relevant to Plaintiff's claims do not readily lend themselves to a chronological narrative. Therefore, the undersigned sets out pertinent facts when discussing Plaintiff's claims and Defendant's Motion. In considering this Motion, the court considers all facts in the light most favorable to Plaintiff. According to Defendant's Motion, Plaintiff did not conduct written discovery or take any depositions in this matter, and the discovery period ended in July 2014. As an apparent result, Plaintiff's factual recitation consists of her deposition testimony. Plaintiff's testimony is competent evidence as to events for which she has personal knowledge. However, much of her testimony is speculative in nature, making it inadmissible in considering summary judgment. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62.

Plaintiff's work hours were primarily from 4:00 a.m. until 12:00 p.m.; she was never available to work later than 2:00 p.m. Pl.'s Dep. 86-87.[4]

As articulated in Plaintiff's brief and discussed in detail below, the factual bases for her race- and disability-discrimination claims include various actions or non-actions by George Turosik ("Turosik"), who was the General Manager at the Columbia Sam's from August of 2011 until he was transferred to another Sam's Club in February of 2013. *See* Pl.'s Mem. 1-4; *see also* Declaration of Defendant's Market Human Resources Manager, Suzanne Holliday ("Holliday Decl.") ¶ 8 (noting when Turosik managed Columbia Sam's). Plaintiff generally notes she had never complained of discrimination prior to Turosik's arrival as manager and has not complained since he left. Pl.'s Mem. 1.

To the extent possible, the court considers Plaintiff's claims as identified by her in her responsive memorandum.

    A.    Title VII Gender Discrimination Claim

        1.  Background

Plaintiff's Complaint generally avers she "has been subjected to disparate working conditions, including worse work assignments than similarly situated males, Caucasians, and those not disabled." Compl. ¶ 11. In the EEOC Charge Plaintiff filed, she claimed she was "subjected to disparate terms and conditions through on or about June 4, 2012, and continuing. Male employees were allowed to work overtime, but I was never offered overtime." ECF No. 35-2 at 56. Plaintiff also indicates in the charge she had complained "about the amount of detailed cleaning [she] was required to perform . . . [whereas] [a] male employee was not required to do

---

[4] ECF No. 35-2 contains pages of Plaintiff's deposition relied on by Defendant in its Motion. ECF No. 39-3 contains the full transcript of Plaintiff's deposition as provided by Plaintiff in her response.

detail cleaning." *Id.*[5] Plaintiff's gender-based claims do not focus on specific events; rather, Plaintiff makes general claims that she was treated differently from male Maintenance Associates.

For example, Plaintiff claims she was discriminated against on the basis of her gender in that male Maintenance Associates were not required to perform the amount of "detailed cleaning" she was. *See* Pl.'s Dep. 27-31, 34-36. Plaintiff testified that when she requested assistance completing tasks assigned to her, she was not provided such assistance. On the other hand, Plaintiff asserts when male Maintenance Associates sought assistance, they received it. Pl.'s Dep. 26-27. Plaintiff claims that, until she started "screaming" that she was not receiving assistance, no one was scheduled to work on maintenance duties during the time she was there (usually 4:00 a.m. until 2:00 p.m.). Once she complained, she indicates Turosik began scheduling "Sonny" to come in "from two to ten," although Sonny was typically doing tasks other than those assigned to Plaintiff. Pl.'s Dep. 28. Plaintiff notes that, when she would return to work after a day off, other employees would inform her that there had been two Maintenance Associates working the same job she was expected to do alone. *Id.* at 29. Plaintiff indicated the two employees usually scheduled to work on her days off were Sonny (male) and Ralph (male). *Id.* Plaintiff noted Sonny worked part-time. *Id.* at 30. Plaintiff testified that, when Sonny came in to work on days she was there, he "didn't do maintenance . . . never touched the bathrooms . . . [or] the breakrooms." *Id.* at 31. Sonny did not sweep or scrub the floors, nor did he clean the

---

[5] Although Plaintiff's reference to her having to do more detailed cleaning than males was made in the context of a claim of retaliation, ECF No. 35-2 at 56, Plaintiff has not pursued a retaliation claim in her Complaint or in her memorandum regarding summary judgment. Accordingly, Plaintiff is considered to have abandoned that claim. *See Lee v. Jasper Cnty.*, No. 9:09-1878-SB-BM, 2012 WL 7149678, at *8 (D.S.C. Sept. 6, 2012) (noting undefended claims regarded as abandoned) (citing *Burns v. Air Liquide Am., L.P.*, 515 F. Supp. 2d 748, 759 n.9 (S.D. Tex. 2007)), *report and recommendation adopted*, No. CIV.A. 09-1878, 2013 WL 594890 (D.S.C. Feb. 14, 2013).

office. *Id.* Plaintiff indicated both Sonny and Ralph had told her the tasks they had performed on her days off, but she noted she did not have other evidence of what they did on those days. *Id.* at 31-32.[6] Plaintiff did not know from whom Sonny and Ralph had been receiving their task assignments. *Id.* at 32.

Plaintiff testified that management had asked that she do "certain jobs because they knew that my guys wasn't (sic) going to do them right or as good as me[.]" Pl.'s Dep. 46.

Plaintiff also testified that Turosik had eliminated a lot of the tasks Plaintiff previously had been required to perform. Pl.'s Dep. 34. Plaintiff stated that, prior to her workers' compensation hearing,[7] Turosik narrowed her assigned daily tasks to sweeping and mopping the floors and cleaning the bathrooms. *Id.* Following orders, Plaintiff stopped performing the detailed tasks. *Id.* at 34-35.

Plaintiff's former supervisor, Jennifer Montville, indicated Plaintiff had asked her why another Maintenance Associate could not be scheduled to work with her in the mornings. Montville Decl. ¶ 3, ECF No. 35-4. Montville advised Plaintiff that Defendant had implemented the Member Needs System ("MNS"), which determined scheduling needs based on past sales and customer traffic. *Id.* ¶ 4. Montville explained to Plaintiff that MNS provided for only one Maintenance Associate in the mornings and that management could not arbitrarily add another shift for the mornings. *Id.* Montville also noted Plaintiff had complained to her and Turosik about tasks assigned to Chavis. *Id.* ¶ 2. Montville indicated Chavis was required to perform cleaning tasks similar to those required of Plaintiff. She noted that, after Chavis had completed cleaning tasks he was sometimes utilized for special projects. *Id.* Montville noted Chavis was

---

[6] Although Plaintiff indicated in deposition she had subpoenaed records regarding who performed various tasks in a workers' compensation action, Pl.'s Dep. 32, those records are not before the court.

[7] Other than Plaintiff's general references to a workers' compensation hearing, the record contains no detail regarding any such hearing or claim.

sometimes used to cover for employees who were on vacation and that he was cooperative in helping where needed. *Id.* ¶ 5.

### 2. Analysis

Defendant argues summary judgment is appropriate because Plaintiff cannot make out a prima facie case of disparate treatment based on gender. To do so, she must show the following: (1) she is a member of a protected class; (2) she was qualified for the job and her performance satisfied her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class received more favorable treatment. *See, e.g., Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (*per curium*); *see also Coleman*, 626 F.3d at 190.

The first and second elements are unchallenged. Defendant argues Plaintiff cannot satisfy the third element because she has suffered no adverse employment action. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted).

In arguing she has shown an adverse employment action for purposes of Title VII, Plaintiff briefly sets out several facts, supported only by her deposition testimony. *See* Pl.'s Mem. 7.[8] Plaintiff first references a "coaching"[9] she received for being a "no call no show" when

---

[8] In Plaintiff's EEOC Charge, she alleged that male employees were allowed to work overtime, but she was never offered overtime. ECF No. 35-2 at 56. She does not reference this in her response to Defendant's Motion for Summary Judgment, so the court need not review this abandoned claim. *See Lee v. Jasper Cnty.*, 2012 WL 7149678, at *8. In any event, Plaintiff testified that, after complaining about not getting enough hours, she was offered additional hours but decided she did not want them. Pl.'s Dep. 86-87.

[9] Defendant calls warnings/counseling given by management to employees as "coachings."

she had been unable to work "because of her disability."[10] *Id.* (citing Pl.'s Dep. 20-21). In her deposition, Plaintiff explains that her then-supervisor, Jennifer Montville, advised Plaintiff that Turosik had instructed Montville to "coach" Plaintiff for two "no show, no call" entries in her records. Pl.'s Dep. 18. Plaintiff advised Montville that she had been in touch with management regarding days she would be out. Pl.'s Dep. 18-25. This coaching could not be an adverse employment action, however. Based on Plaintiff's own testimony, the notation/coaching was removed from her file after she discussed the matter with other management. *Id.* In fact, Plaintiff testified that she was "never held accountable" for the no-shows that were the subject of this coaching. Pl.'s Dep. 26. Further, Plaintiff indicated that the coaching never negatively impacted anything as it related to her job. *Id.* This testimony provides:

> Question (Counsel): Okay. And, so as far as you know, [the no-show, no-call] coaching never negatively impacted anything as it relates to your job?
> Answer (Plaintiff): No, it didn't.

Pl.'s Dep. 26. Elsewhere in her deposition, Plaintiff advised counsel that she had "never been coached," so she did not know anything about the coaching process. *Id.* at 76. Nothing else in the record suggests Plaintiff received any coachings that impacted her job. Plaintiff has not demonstrated any adverse employment action based on this supposed coaching, nor has she in any way demonstrated how this was attributable to her gender.

Plaintiff also references her testimony that she was required to perform tasks that no male employee was required to perform, claiming it demonstrates an adverse employment action. Pl.'s Mem. 7 (citing Pl.'s Dep. 27-31, 34-36). Plaintiff has not demonstrated, however, that these allegedly disparate task assignments resulted in any adverse employment impact. Temporary

---

[10] Plaintiff's disability-related claim is discussed in detail below. To the extent Plaintiff seeks support for her Title VII gender-discrimination claim by referring to a coaching or to her being forced to "work in the sun when she specifically had a doctor's note advising her to avoid sun exposure[,]" Pl.'s Mem. 7, such claims do nothing to help establish her prima facie case for *gender* discrimination.

changes to assigned tasks or workload are not adverse employment actions. *See, e.g.*, *Taylor v. Burwell*, No. PWG-13-1998, 2014 WL 3547337, at *6 (D. Md. July 16, 2014) (citing *Grimsley v. Marshalls of MA, Inc.,* 284 F. App'x 604, 609 (11th Cir. 2008) ("Although Grimsley's workload sometimes increased and he was occasionally assigned additional tasks, these kinds of temporary assignments, without a change in compensation or position, do not amount to a 'serious and material change in the terms, conditions, or privileges of employment.'"); *McCants v. AT & T Corp.,* No. 04–74905, 2005 WL 3071840, at *2 (E.D. Mich. Nov. 14, 2005) (noting that although plaintiff had alleged genuine adverse actions, the fact that she was assigned clerical tasks was not an adverse action)). Here, any increase in Plaintiff's work load was temporary. Plaintiff noted that Turosik had reduced her work load. Pl.'s Dep. 34-38.

Plaintiff also submits her salary was negatively impacted at one point when she did not obtain the highest raise she could have obtained based on an improper performance review, one that she claims was eventually removed from her file because it was false.[11] Pl.'s Mem. 7 (citing Pl.'s Dep. 40-41). To receive the highest potential raise of $.60/hour, an employee must receive the top evaluation rating possible ("Role model"). Pl.'s Dep. 40-43. Plaintiff testified that the evaluation Montville gave her while Turosik was still manager permitted her a $.50/hour raise, rather than the possible $.60. *Id.* That year, Plaintiff testified she told "them, the ten cent just go ahead and keep . . . ." Pl.'s Dep. 40. The following year (apparently after Turosik had left), Montville again evaluated Plaintiff and, based on that evaluation, Plaintiff was not slated to receive the maximum raise. *Id.* Plaintiff testified that, after she spoke with Montville and reminded her of some of Plaintiff's contributions, Montville changed the evaluation such that Plaintiff would receive the full $.60 raise. *Id.* at 40-42.

---

[11] Defendant takes issue with Plaintiff's characterizing the prior evaluation as having been removed because it was "false." Def.'s Reply 6.

Nothing in the evidence Plaintiff has presented demonstrates Turosik was involved with any of Plaintiff's evaluations and resulting compensation. However, the court agrees generally with Plaintiff that one can show an "adverse employment action" for purposes of Title VII by showing an impact on compensation. Accordingly, the undersigned finds Plaintiff has satisfied this prong of the prima facie case of Title VII gender discrimination.[12]

Plaintiff has not, however, satisfied the fourth and final prong of her prima facie case— that she was treated differently than similarly situated male employees. Plaintiff argues she has proffered evidence sufficient to satisfy her prima facie burden here, based on her specifically identifying "repeated instances where male employees, with the exact same position title as her, were allowed to perform lighter work, or 'better' tasks, even after she complained about such conduct to Turosik." Pl.'s Mem. 7 (citing Pl.'s Dep. 29-41, 80-81). Plaintiff identifies her comparators as male maintenance workers "Ralph (white male), Sonny (white male), and Charlie (black male)." Pl.'s Mem. 3 (citing Pl.'s Dep. 27-32).

The undersigned finds Plaintiff has not provided competent evidence that similarly situated male employees were treated differently. As an initial matter, Plaintiff has not provided her would-be comparators' last names, let alone their personnel information. In addition, in Plaintiff's deposition, she seems to indicate she is not focused on Charlie as a comparator. *See* Pl.'s Dep. 31. In any event, Plaintiff's providing their names and noting they had the "exact same position title" is insufficient. *See Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (noting requirement of establishing "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same

---

[12] The undersigned does not offer a determination at this prima facie stage of the analysis that this arguably adverse employment action was in any manner *causally related* to Plaintiff's gender.

standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations omitted).

In fact, the only record evidence with any amount of detail about Plaintiff's would-be comparators comes from Defendant. Montville noted that Plaintiff had complained to her before that Willard "Sonny" Chavis,[13] a part-time maintenance employee, had not been required to do as much cleaning as Plaintiff. Montville Decl. ¶ 2, ECF No. 35-4. Montville noted Chavis was utilized for "side projects" such as painting and building displays. *Id.* Montville indicated Chavis was required to clean and did additional projects in the afternoon. Montville noted Chavis was a part-time employee with capacity to accept additional hours and that his background in carpentry, tile, and floorings was useful for certain projects. *Id.* ¶ 4. Plaintiff has provided no evidence regarding Chavis, Ralph, or Charlie. Plaintiff cannot establish a prima facie case as to this gender-discrimination claim, making summary judgment appropriate.

In any event, assuming Plaintiff has set forth a prima facie case, she has not set forth evidence to overcome Defendant's stated business reasons for its employment decisions. Montville has explained that Defendant sometimes scheduled Chavis to perform special tasks based on his prior experience and that MNS scheduled Plaintiff to work mornings. Montville Decl. ¶¶ 2, 4.

Plaintiff argues Defendant has failed to meet its burden of establishing legitimate, nondiscriminatory reasons for its decisions. Pl.'s Mem. 10 (noting Defendant "has not produced any affidavits or personnel files to show that [Plaintiff's] male counterparts had more experience or were more qualified than Plaintiff to perform their 'special tasks.'"). Plaintiff misstates Defendant's responsibility at this stage.

---

[13] For sake of argument, the court will presume that Willard "Sonny" Chavis is the same coworker "Sonny" mentioned by Plaintiff.

Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse action against plaintiff]." *DeJarnette,* 133 F.3d at 299 (internal quotation marks omitted). In other words, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's personnel decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was scheduled to work alone in the mornings and to perform certain tasks was because she is a female. Plaintiff has not satisfied this burden. Summary judgment as to Plaintiff's Title VII claim is appropriate.

B.     Disability Discrimination Claim

1.  Background

In Plaintiff's EEOC Charge, she avers she was "involuntarily transferred to the gas station on or about May 25, 2012." ECF No. 35-2 at 56. She stated she "believe[d]" she had been transferred there "in retaliation"[14] because she had complained about the amount of detail cleaning she was required to do. *Id.* She noted she was "placed on light duty and then relocated." *Id.* Plaintiff further submits she was "denied reasonable accommodations through on or about June 4, 2012, and continuing. [Defendant] was aware of my medical condition. I provided a statement from my doctor and my employer stated that it was not enough." *Id.*

In defending against summary judgment as to her disability discrimination claim, Plaintiff refers both to her issues with carpal tunnel syndrome ("CTS") and her sun sensitivities. Regarding Plaintiff's disability-discrimination claim as to CTS, record evidence is scant.

---

[14] As noted above, Plaintiff has abandoned any arguable retaliation claim.

Plaintiff did not reference CTS or being restricted from doing certain repetitive tasks in her EEOC Charge. Most of the evidence regarding Plaintiff's CTS and restrictions comes from her deposition.

Plaintiff testified she did not know the exact time she began having issues with CTS, although she placed it prior to 2011. Pl.'s Dep. 12. Plaintiff noted she was not under work restrictions because of CTS at the time of her July 28, 2014 deposition. She testified that at some time when Turosik was managing the Columbia Sam's she had been restricted, but Turosik had not complied with the restrictions. *Id.* at 13. Plaintiff "was told [she] was not supposed to do anything repetitive by the workmans' comp. doctor." *Id.* Plaintiff stated that, while on those restrictions, Turosik instructed her to fold clothes and sweep the parking lot—tasks that were "pretty much against [her] restrictions." *Id.* Another manager, "Mike T.," told her she should not be folding clothes and sent her to work at the front door. *Id.* Plaintiff states Turosik told her several times to fold clothes. She said she complained to the workers' compensation doctor that she was told to do tasks that violated her restrictions. Pl.'s Dep. 14. Plaintiff indicated she complained to Turosik and asked that he contact CMI, which is the company that handles Defendant's workers' compensation claims. *Id.* at 14-15. Plaintiff testified that the CMI adjuster called her back and told her she was to perform all tasks Turosik told her to perform. *Id.* at 15.

According to a form from Carolina Occupational Healthcare, LLC dated May 11, 2012, and discussed at Plaintiff's deposition, Plaintiff's "date of injury" for CTS was May 9, 2011. ECF No. 35-2 at 49. That form limits Plaintiff to lifting no more than 20 pounds and includes the following additional restriction: "No Hours-Long Repetitive Hand Motion that could cause discomfort/pain." *Id.* In deposition, Plaintiff acknowledged that she was released to return to her normal duties as of June 19, 2012. Pl.'s Mem. 72, *see* Montville Decl. ¶ 8. In Plaintiff's

deposition, an exhibit from Plaintiff's primary care group was discussed in conjunction with this return to work; however, that exhibit has not been made part of the record here.

According to Montville, during this time from May 11, 2012 and June 19, 2012, while Plaintiff was restricted because of CTS, Defendant (through Turosik) offered Plaintiff a Temporary Alternative Duty assignment doing various tasks including "performing parking lot maintenance, answering the telephones in the Bakery, and working at the gas station, as a door greeter, and as a telephone operator." Montville Decl. ¶ 6; *see* Pl.'s Dep. 67-69. Plaintiff testified that Defendant/Turosik "tried" to accommodate her restrictions other than when he required her to fold clothes. Pl.'s Dep. 67-68. Plaintiff testified, though, that Turosik wanted her to sweep, which is a repetitive task. *Id.* at 68. Plaintiff stated Turosik "didn't really want [her] on the door," and she did not recall Turosik telling her to answer the phones. *Id.* at 68-69.

One of the jobs Plaintiff was asked to do that would have been nonrepetitive was to work at the gas station. Pl.'s Dep. 69. Plaintiff advised Turosik and Montville that she was allergic to sun, which would keep her from working at the gas station. Pl.'s Dep. 47. Plaintiff advised that she had had a skin problem since before she began working for Defendant. She had it checked in around 2004 and learned sun exposure caused her skin problems. *Id.* Plaintiff indicated exposure to heat, not just direct sunlight, could cause her problems. *Id.* at 48. Turosik asked that Plaintiff provide medical documentation of her condition. *Id.*, Montville Decl. ¶ 6.

On May 25, 2012, Plaintiff again met with Turosik and Montville and provided a doctor's note that confirmed she had been diagnosed with Allergic Urticaria, also known as hives,[15] in 2004. *See* Montville Decl. ¶ 7, ECF No. 35-2 at 48 (May 23, 2012 letter from Alan H. Brill, M.D.). Dr. Brill noted that Plaintiff's condition "presents increasing symptoms with exposure to

---

[15] "Hives, also known as urticaria, are an outbreak of swollen, pale red bumps, patches, or welts on the skin that appear suddenly—either as a result of allergies, or for other reasons." http://www.webmd.com/allergies/guide/hives-urticaria-angioedema (last visited May 14, 2015).

the sun[,] and that she was "advised to restrict her sun exposure as a preventative measure in order to decrease the discomfort associated with the obvious symptoms such as rash and/or hives." ECF No. 35-2. Dr. Brill noted Plaintiff had been prescribed Allegra 180 mg to mitigate symptoms and indicated that "[c]ontinuation of care for this condition may be provided by [Plaintiff]s primary care physician." *Id.*

Upon reviewing the note from Dr. Brill, Montville and Turosik advised Plaintiff that the information provided in that note should not restrict her from working at the gas station, which is covered and would not expose her to direct sunlight. Montville Decl. ¶¶ 7-8. They also noted Plaintiff may not end up working at the gas station as part of her light duty. *Id.* ¶ 8. Turosik explained to Plaintiff that she would need to complete Defendant's ADA accommodation form for the Human Resource Department's consideration to receive approval to not work at the gas station. *Id.* ¶ 7. Plaintiff chose not to complete that paperwork. *Id.*, Pl.'s Dep. 55-56.

Plaintiff worked at the gas station on one day during the time at issue: June 1, 2012. Pl.'s Dep. 60. Plaintiff indicated that during that day she remained under a cover except the one time she picked up some garbage from the parking lot. Pl.'s Dep. 57-59. She reiterated during deposition that exposure to heat, even if shaded, exacerbated her condition. *Id.*

Plaintiff also testified that "Sonny," presumably Sonny Chavis mentioned above, has a "skin problem right to this day, he claims." Pl.'s Dep. 63. Because of his skin problem, Sonny is not required to wear a uniform, although others in the maintenance department wear uniforms. *Id.* Plaintiff stated that Sonny told her he had never been required to provide a doctor's note regarding his skin problem. *Id.* Plaintiff acknowledged she was unsure whether he had been required to fill out a reasonable accommodation form. *Id.* at 63-64.

2.    Analysis

Defendant seeks summary judgment on Plaintiff's ADA claim of disability discrimination. To survive summary judgment on this ADA claim, Plaintiff must first establish a prima facie case by showing (l) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was meeting the employer's legitimate performance expectations at the time of the adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. *Reynolds*, 701 F.3d at 150 (considering an ADA wrongful-termination claim). If she does establish a prima facie case, the court considers the claim using the above-discussed burden-shifting analysis. *Ennis*, 53 F.3d at 59.

Regarding the first element of a prima facie case of disability discrimination the ADA defines "disability" "with respect to an individual [as]—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Major life activities include "performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). Regulations promulgated based on the amendments to the ADA that became effective in 2009 provide that "substantially limits" is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

Defendant argues Plaintiff cannot establish she is "disabled" for purposes of the ADA because she has not shown her CTS or her sun allergy is an "impairment" that "substantially

limits" a "major life activity" as defined in the ADA and interpreted in regulations of the EEOC. Def.'s Mem. 12.

Plaintiff argues she has established disability because a doctor had placed work restrictions on her based on her CTS and because her note regarding sun allergy indicated restrictions, as well. Pl.'s Mem. 9. Plaintiff cites to interpretive guidance regarding the ADA as support for both CTS and a sun allergy as being disabilities under the statutory scheme. *Id.* at 8-9 (citing 29 C.F.R. Pt. 1620, App.[16] and 29 C.F.R. § 1630.2).

Based on the ADA amendments that became effective in 2009, the undersigned agrees with Plaintiff that her CTS is a "disability." The Appendix to 29 C.F.R. Pt. 1630 provides in relevant part:

> Similarly, the Commission anticipates that the major life activity of performing manual tasks . . . could have many different manifestations, such as performing tasks involving fine motor coordination, or performing tasks involving grasping, hand strength, or pressure. Such tasks need not constitute activities of central importance to most people's daily lives, nor must an individual show that he or she is substantially limited in performing all manual tasks.

29 C.F.R. § Pt. 1630, App. The record evidence is that Plaintiff's CTS limited her from performing certain manual tasks from May 11, 2012 through June 19, 2012. For that period, Plaintiff's CTS was a "disability" for purposes of establishing a prima facie case.

The record evidence does not support Plaintiff's claim that her sun allergy was a disability under the ADA, however. The medical information she provided indicated a diagnosis from six years prior to the time she provided the information to Defendant. In her deposition, Plaintiff noted that her sun allergy was well controlled with medication and that she took family cruises. Pl.'s Dep. 52. Additionally, Plaintiff declined to submit the appropriate paperwork to have Defendant's Human Resources Department consider whether her sun allergy was a

---

[16] Plaintiff's citation of 29 C.F.R. Pt. 1620, App., rather than 29 C.F.R. Pt. 1630, App., is an apparent scrivener's error.

disability under the ADA. Even if considered a disability, it would only be relevant to the one day Plaintiff worked at the gas station, June 1, 2012.

For argument's sake, the court will consider Plaintiff to have satisfied the first prong of her prima facie case for the limited period noted above. *See* 29 C.F.R. § 1630.2(j)(1)(i) (noting "substantially limits" is not a difficult standard to satisfy).

Plaintiff must also demonstrate she suffered an adverse employment action. In analyzing this element of the disability-discrimination claim, both parties refer back to the discussion of the same element of Plaintiff's gender-discrimination claim. *See* Def.'s Mem. 13, Pl.'s Mem. 7. Specifically focused on her disability claim, Plaintiff submits an adverse employment action took place when "Turosik made her work in the sun when she specifically had a doctor's note advising her to avoid sun exposure." *Id*. However, the undersigned agrees with Defendant that Plaintiff's being reassigned to work in the covered portion of the gas station for one day was not an adverse action. *See Williams v. Brunswick Cnty. Bd. of Educ.*, 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010) *aff'd*, 440 F. App'x 169 (4th Cir. 2011) (applying Title VII's "ultimate employment" action standard to demonstrate adverse employment action in ADA discrimination claim). Only reassignment that had a significant impact on Plaintiff's employment could be considered an adverse employment action here. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (noting "reassignment can only form the basis of a valid [] claim if the plaintiff can show that the reassignment had some significant detrimental effect on her.") (in Title VII context). Plaintiff has not provided any evidence that this one-day assignment resulted in any decrease in compensation, job title, level of responsibility, opportunity for promotion, or that it had any other detrimental effect on employment. Further, as discussed above, Plaintiff's claim that she received a coaching for not reporting to work when she was out because of disability was not an adverse employment action as Plaintiff admitted the coaching was not held against her and did

not impact her employment. Pl.'s Dep. 26. Plaintiff cannot establish this prong of her prima facie disability-discrimination claim,[17] and summary judgment should be granted.

Finally, even if Plaintiff could be said to have established an adverse employment action as to her disability claim, she has not provided competent evidence that such action(s) occurred under circumstances giving rise to a reasonable inference of unlawful discrimination.[18] Plaintiff argues that she "has sufficiently alleged, and Defendant has admitted, that Turosik forced her to work in direct violation of her disability's restrictions as written by her doctor." Pl.'s Mem. 9.

To the extent this oblique argument refers to Plaintiff's testimony that Turosik required her to perform repetitive tasks in violation of work restrictions imposed by her workers' compensation doctor, the argument is unsuccessful. Plaintiff has proffered only her hearsay- and supposition-laden testimony that Turosik did require her to perform tasks violative of work restrictions. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62. The only record evidence of any time Plaintiff was under work restrictions from her workers' compensation doctor was the period from May 11 through June 19, 2012. ECF No. 35-2 at 49. In her deposition, Plaintiff did not provide a date or specific time-frame when Turosik instructed her to fold clothes or sweep, so Plaintiff cannot meet her burden of showing this happened during the relevant time period. In fact, in Plaintiff's deposition, when asked whether she ever complained to Turosik that he was telling her to perform jobs outside of her work restrictions, Plaintiff responded that she had "complain[ed] one time to the workmans'

---

[17] To the extent Plaintiff argues other actions were adverse actions for purposes of the disability-discrimination claim, she has not satisfied her burden of so demonstrating.

[18] Defendant does not dispute that Plaintiff satisfies the third prong—that she was meeting Defendant's legitimate performance expectations.

comp doctor," and that she was later questioned by a manager, although she could not "remember what manager it was back then." Pl.'s Dep. 14. This testimony makes it far from clear that any conversation that may have occurred was within the relevant time period, when Turosik was manager. Further, the restriction was for no hours-long repetitive hand motion that could cause discomfort/pain. ECF No. 35-2 at 49. Plaintiff testified she experienced pain when folding clothes, but she also noted she had experienced similar pain when performing tasks that would be within her work restrictions. Pl.'s Dep. 15-16. Plaintiff's testimony that she had Turosik call the workers' comp adjuster regarding her restrictions and that the adjuster contacted Plaintiff and advised her to perform whatever task Turosik assigned, Pl.'s Dep. 15, is not corroborated by any other record evidence.

In addition, it is not disputed that Defendant attempted to accommodate the work restrictions based on her CTS. A portion of this accommodation included Plaintiff's working at the gas station. When Plaintiff raised the issue of her skin allergy, Defendant appropriately requested and reviewed the medical information Plaintiff supplied. The medical information was based on a six-year-old diagnosis, and Defendant reasonably requested additional documentation. Plaintiff chose not to provide it, and Defendant reasonably had her work for one day in covered portions of the gas station.

Plaintiff's argument that Sonny Chavis was not required to provide sufficient paperwork as to his supposed medical condition to keep him from being required to wear a uniform does nothing to change this analysis. Although Plaintiff testified that Chavis had advised her he had not been required to provide a doctor's note, she conceded she was unsure whether he had been asked to complete Defendant's ADA-related forms. Further, Plaintiff has offered no evidence regarding what Sonny's condition may be. Nothing about these facts or others presented by Plaintiff presents a reasonable inference of unlawful discrimination. Plaintiff has not provided

evidence that any actions took place because of her disability (or her gender). Plaintiff has not established a prima facie case of disability discrimination. Summary judgment should be granted.

In any event, assuming Plaintiff has set forth a prima facie case, she has not set forth evidence to overcome Defendant's stated business reasons for its actions. Montville has explained that Plaintiff was given other tasks to accommodate the CTS work restrictions, and that one alternative task was to work at the gas station. Defendant's policy required more detailed information about Plaintiff's claimed sun allergy, and Defendant reasonably required more information of Plaintiff. Without such information, Defendant assigned Plaintiff to work one day at the gas station. *See* Montville Decl. ¶¶ 6-8.

Plaintiff submits Defendant cannot satisfy its burden of proof because it has "provided no documentation or evidence to show that there were no other positions inside Defendant's club which would accommodate both of her disabilities." Pl.'s Mem. 10. As noted above, the court finds Plaintiff has not established her skin allergy was a "disability." Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse action against plaintiff]." *DeJarnette,* 133 F.3d at 299 (internal quotation marks omitted). In other words, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's personnel decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was assigned certain tasks was *because of* her disability.

In addition, to the extent Plaintiff is arguing that *Defendant* had the burden of demonstrating there were no other available positions that might have accommodated Plaintiff's

claimed disability/disabilities, this argument is of no avail here. The burden is on Plaintiff, not Defendant, to establish (at the prima facie-claim stage) that she could perform the essential functions of her job with reasonable accommodations. *See generally Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 345 (4th Cir. 2013) (noting *plaintiff* must establish the following elements to create a prima facie case for failure to accommodate under the ADA: (1) the employee was an individual with a disability within the meaning of the statute; (2) the employer had notice of the employee's disability; (3) the employee could perform the essential functions of her job with reasonable accommodation; and (4) the employer refused to make such accommodations). As noted above, both Plaintiff and Defendant have analyzed the ADA claim using slightly different elements of a establishing a prima facie case. *See* Def.'s Mem. 12 and Pl.'s Resp. 8 (using *Reynolds* prima facie elements). If analyzed using the criteria set out in *Wilson*, Plaintiff's prima facie case would nonetheless fail. Plaintiff has not presented evidence sufficient to carry her burden, and she simply has not established Defendant "refused" to accommodate her. By extension, then, these same arguments fail if considered at the pretext-analysis stage. Plaintiff has not satisfied her burden, making summary judgment appropriate.

Plaintiff also seems to argue she has created a genuine issue of fact as to whether Defendant's stated business reasons were pretextual because "Turosik accommodated her initial carpal tunnel restrictions and allowed her to work out of the sunlight." Pl.'s Mem. 10. She argues this at least creates an issue of fact as to whether Defendant's actions were "legitimate and non-discriminatory[.]" *Id.* The court is unsure how this could establish the requisite pretext. Plaintiff offers no further explanation of how this is so. At bottom, Plaintiff is required to demonstrate that she was discriminated against because of her disability. She has not done so. Summary judgment is appropriate.

III.    Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be granted and this matter be ended.

IT IS SO RECOMMENDED.

May 19, 2015                                              Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**